IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ALEXANDER STROSS,<br><br>              Plaintiff,<br><br>    v.<br><br>HEARST COMMUNICATIONS, INC., THE HEARST CORPORATION, HEARST NEWSPAPERS, LLC, HEARST NEWSPAPERS II, LLC, HEARST SEATTLE MEDIA, LLC, HEARST MEDIA SERVICES CONNECTICUT, LLC, EDWARDSVILLE PUBLISHING COMPANY, LLC, MIDLAND PUBLISHING COMPANY, LLC, and HURON PUBLISHING COMPANY, LLC,<br><br>              Defendants. | Civil Action No. 5:18-cv-01039-JKP-RBF |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF ELLEN BOUGHN, AS CLARIFIED**

Jonathan R. Donnellan
Ravi V. Sitwala
Nathaniel S. Boyer
Nina Shah (admitted *pro hac vice*)
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2030
Fax: (212) 649-2035
jdonnellan@hearst.com
rsitwala@hearst.com
nathaniel.boyer@hearst.com
nina.shah@hearst.com

*Attorneys for Defendants*

Defendants respectfully submit this response in opposition to Plaintiff Alexander Stross ("Plaintiff")'s Amended Objections to the Magistrate Judge's Order Granting in Part Defendants' Motion to Exclude the Expert Report and Testimony of Ellen Boughn, as Clarified. *See* ECF No. 114 (the "Objections"). In short, Magistrate Judge Farrer correctly excluded the opinions of Plaintiff's proffered expert under *Daubert* as unreliable and more likely to confuse than assist a factfinder. That conclusion, which falls well within Judge Farrer's sound discretion, should not be upset, especially in light of the highly deferential standard of review that applies.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

The procedural and factual background of this case is set forth in the parties' extensive prior briefing, which Defendants respectfully incorporate by reference. On March 27, 2020, Defendants filed a "Motion to Exclude the Expert Report and Testimony of Ellen Boughn Pursuant to Fed. R. Evid. 702," which the parties fully briefed. On May 14, 2020, the Magistrate Judge held a telephonic hearing, and ruling from the bench, announced that Defendants' "motion to exclude is granted with a written order to follow." ECF No. 95 at 69:3-4.

The Court issued its written order on June 8, 2020 (ECF No. 96, the "Order"), granting Defendants' Motion "in PART such that Boughn may not testify as an expert as to the fair-market value of a license for the photographs in question." Order 6. In its written order, the Court incorporated the arguments made by Defendants along with its own comments at the hearing and also provided a non-exhaustive list of reasons for excluding the testimony. *Id.* at 3. The Court noted that Boughn's methodology excluded consideration of Plaintiff's actual licensing history for the very works at issue without adequate justification. *Id.* at 4. It also pointed out that Boughn failed to account for the viral nature of the images, in that Plaintiff would not have expected the ultimate popularity of the images at the time of the hypothetical licensing discussion that informs the fair market value. *Id.* The Court cited other "red flags" as well, including the huge disparity

1

between the amount made by Defendants from the postings that included the images ($20,000-$40,000) and the hypothetical license fee that Boughn posits it would have paid (well over $500,000), and the arbitrary 10% discount applied versus some larger discount. *Id.* at 5-6. Defendants offered further reasons that Boughn's opinion is unreliable in its papers, including, *inter alia*, Boughn's failure to identify a comparable license. The only example Boughn could offer was when Microsoft paid $125,000 to purchase all rights to the photograph that it used as the background for over one billion computers and which became the most viewed photograph in human history; Boughn opines that Defendants would pay more than *four times* that fee for a non-exclusive editorial license for web-only rights here. Def. Mot.[1] 9 n.10.

On June 30, 2020, the Court issued an Order of Clarification ("Clarification Order"), ECF No. 104, in response to Defendants' motion to Judge Farrer seeking clarification of the June 8 Order, ECF No. 99. The Clarification Order granted in part and denied in part the Motion to Clarify, and also commented on Plaintiff's objections to the Order, ECF No. 101. It elaborated that "one of the several independent reasons why Boughn's [valuation] testimony would only confuse the jury and not assist it" is that "[t]here is no sound basis" for the expert's assumption "that every photo *necessarily* has an independent economic value that should be added together with the other photos' necessary independent economic values to achieve a total." Clarification Order 2. Citing to Defendants' arguments, it pointed out that Plaintiff's June 22 objections failed to provide any justification for Boughn's complete disregard of the fact that "the photos 'were marketed as, and typically licensed as, [part of] a group.'" *Id.* at 3 (quoting Def. Mot. 20). The

---

[1] "Def. Mot." refers to Defendants' Motion to Exclude the Expert Report and Testimony of Ellen Boughn Pursuant to Fed. R. Evid. 702, ECF No. 92. "Def. Reply" refers to Defendants' Reply Brief in Further Support of Their Motion to Exclude the Expert Report and Testimony of Ellen Boughn Pursuant to Fed. R. Evid. 702, ECF No 89.

Clarification Order further noted that Plaintiff failed to address the Order's finding that the Defendants' revenue figures "reveal[] how wildly out of sync Boughn's valuation is with the economic realities presented," which "raises one 'red flag' among several others." *Id.* at 4. In response, on July 14 Plaintiff filed Amended Objections to the Magistrate Judge's Order Granting in Part Defendants' Motion to Exclude the Expert Report and Testimony of Ellen Boughn, as Clarified. *See* ECF No. 114 (the "Objections"). For the reasons set forth below these Objections should be overruled.

## II.    LEGAL STANDARD

A party's objections to rulings by a Magistrate Judge on non-dispositive matters, such as the ruling at issue here, should only be sustained where the ruling was "clearly erroneous or [] contrary to law." Fed. R. Civ. P. 72(a). This is a "highly deferential standard that requires the court to affirm the decision of the magistrate judge unless on the entire evidence the court is left with a definite and firm conviction that a mistake has been committed." *LeJeune v. Cobra Acquisitions LLC*, No. 5:19-CV-0286-JKP, 2020 WL 250560, at *1 (W.D. Tex. Jan. 16, 2020) (quotations and alterations omitted). "The clearly erroneous standard of review does not entitle the court to reverse or reconsider the order simply because it would or could decide the matter differently." *Id.* at *2 (citation and quotation marks omitted). "To the contrary, the great deference owed to the magistrate judge's findings compels the conclusion that where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (citation, quotation marks, and alterations omitted). Similarly, where there is case law supporting different positions, "it is the essence of discretion to determine which case to apply when there is no binding authority directly on point," and a magistrate judge is within his or her power to exercise that discretion. *Id.* at *4.

### III. ARGUMENT

There can be no dispute that a court has the discretion under *Daubert* to exercise a gate-keeping function to exclude expert evidence that is unreliable or otherwise would not assist a trier of fact. Here, Judge Farrer properly exercised his discretion to exclude Boughn's opinions and offered numerous independently sufficient reasons for doing so. Under the deferential standard of review applicable here, there is simply no basis to upend the Order.

Plaintiff initially appears to suggest that problems with the factual basis and sources relied upon for an expert's opinion can *never* justify exclusion—that they categorically go to the weight the testimony should be accorded. Objections 4. That is wrong. As the numerous cases cited by Defendants hold, while such challenges often go to weight, when serious enough, they affect the underlying reliability of the opinion and warrant exclusion. *See* Def. Mot. 13-14, 19-20; Def. Reply 1-2. And deciding where that line falls is committed to the discretion of the Court. *See, e.g.*, *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) ("District courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless 'manifestly erroneous.'") (citation and quotation marks omitted).

Plaintiff further argues that Boughn did not ignore his prior licensing history—she chose not to consider it because she deemed the licenses to be "not 'comparable'" and to require her to engage in "speculation," because Stross sought attribution in lieu of a fee. Objections 4-5. But, consistent with Defendants' arguments, Def. Mot. 14-18; Def. Reply 1-4, Judge Farrer found that Boughn omitted considering the licenses "without adequate justification," Order 4. The Court cited authority for this, Order 4 (citing *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015), for the proposition that "[t]he hypothetical-negotiation determination must be tied to the particular work at issue and its marketplace value"), and Defendants also cited several other

cases to the same effect, Def. Mot 14-18; Def. Reply 2-4. While Plaintiff cites to other cases that declined to exclude testimony under different facts, not only are those cases inapposite as Defendants explained in their papers, Judge Farrer exercised his sound discretion in following the cases cited by Defendants.

In terms of the viral nature of the photographs, Plaintiff argues that Defendants' uses generally did not relate to their viral nature. Objections 6. Putting aside the accuracy of that characterization, Plaintiff's argument misses the point. As Boughn conceded, the hypothetical negotiation at issue would be a single negotiation before the uses at issue. Def. Mot., Boyer Decl. Ex. B at 35:13-24, 285:14-21. Accordingly, the later popularity of the images would have been unknown to the parties. And, as the Court explained, even after the images began receiving notoriety, Plaintiff continued to license use of the images for no money, and Boughn's failure to take this into account "leave[s] unbridged a major analytical gap." Order 5.

Plaintiff takes issue with the Court's reference to Defendants' revenue from postings that included the photograph, both because he doesn't believe the figures are accurate and because he claims they are irrelevant. In terms of the accuracy issue, it is presently before the Court as part of one of Plaintiff's pending discovery motions. ECF No. 76. In short, Plaintiff did not like the answers he received regarding the revenue data Defendants produced, but also chose not to seek further information even when Defendants offered an additional witness at their cost.[2] That is no basis to disregard the evidence in the record. Moreover, while Plaintiff is correct that profits may

---

[2] Moreover, before Plaintiff filed his Amended Objections, Defendants proffered a declaration from the company witness authenticating the documents and explaining why Defendants have "every reason to believe that the pageviews" and thus the revenue "reflected in" the documents Plaintiffs challenges "are accurate, excluding insignificant deviations." *See* ECF No. 110-1 (declaration of Bridget Williams, proffered in response to motion to exclude certain evidence cited in Defendants motion for summary judgment).

5

be recovered in addition to actual damages in a copyright case where Plaintiff can connect them to the alleged infringement, that does not mean they are not relevant to the hypothetical license fee. Indeed, it seems plainly relevant that the amount Defendants would expect to make from a license would be part of the consideration of how much to pay. And it is the extreme disconnect between Boughn's proposed market value and Defendants' actual revenue that the Court properly noted as a red flag, even if not determinative. Order 5; Clarification Order 4.

Plaintiff's attempt to justify the arbitrary 10% discount Boughn applied rings hollow. While he claims Boughn did explain its basis, that explanation amounts to the discount being "customary" within another arbitrary range. Objections 8. As the Court explained, that is not a sufficient explanation given the facts presented here. Order 5-6. Indeed, as Defendants pointed out in the briefing, Boughn could not identify any situation where a licensee paid anything close to the amount she posits for an editorial license. The example she offered as the closest analog was Microsoft's purchase of all rights (not just a non-exclusive license as is at issue here) to the photograph used as the default wallpaper for Windows XP for $125,000. Def. Mot. 9 n.10. In other words, Boughn opined that Defendants would have paid for a non-exclusive license over four times the amount that Microsoft paid for all rights to the photograph that served as the default wallpaper for at least one billion computers worldwide and is reportedly the most viewed photograph in human history. This aptly illustrates the lack of fit and unreliability of her opinion.

Plaintiff does not seriously contest the Clarified Order's finding that, because the photos were marketed and licensed primarily in groups, "[t]here is no sound basis for" Boughn's "assum[ption] that every photo *necessarily* has an independent economic value that should be added together with the other photos' necessary independent economic values to achieve a total" hypothetical license fee. Clarification Order 2. Instead, Plaintiff essentially responds: so what?

He argues that an expert is not required to establish the photos' independent economic value before using per photo licensing fees in an actual damages calculation. That argument defies both common sense and *Daubert*. Boughn's calculation of a hypothetical license fee by multiplying the fee for each separate photograph for each separate potential display—notwithstanding the fact that *multiple at-issue photographs were never actually licensed separately*—epitomizes a lack of fit between the facts and her opinion. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993).

Accordingly, the Court did not act erroneously in exercising its gatekeeping function under *Daubert* to exclude her opinion on this ground, let alone clearly erroneously. Plaintiff's denial that the photographs were typically licensed as a group also falls flat—Plaintiff never licensed the photographs *separately* even if the licensee sometimes only wanted one. In any event, one or two outliers do not change the pattern of marketing and licensing as a group. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1281 (11th Cir. 2015) (rejecting "outlier" instances of photos being sold separately in light of pattern of group licenses); *see* Def. Reply 5 n.8.

Finally, Plaintiff argues that, because other courts have accepted Boughn's methodology of straight multiplication of stock licenses in other circumstances, it was error for the Court to exclude it here. Objections 10. He further suggests there is no precedent supporting exclusion based on failure to consider actual licensing history. *Id.* Neither argument has merit. Defendants cited numerous cases stressing the importance of considering actual licensing history. Def. Mot 14-18; Def. Reply 2-4. And Defendants cited cases excluding expert opinions where the expert failed to account for such history. *Id.*; *see also* ECF No. 95 at 55:17–56:5 (citing *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-00847-SS, 2016 WL 6075566, at *4

7

(W.D. Tex. Apr. 22, 2016) (excluding expert who chose not to use plaintiff's actual sales in favor of third-party data to project damages and noting that "[e]xperts cannot ignore relevant evidence by cherry-picking the facts which conform to a desired outcome"); *Fair Isaac Corp. v. Fed. Ins. Co.*, No. 16-CV-1054 (WMW/DTS), 2020 WL 1330214, at *13 (D. Minn. Mar. 23, 2020) (excluding copyright damages expert who based his opinion on what plaintiff would have charged rather than what a willing buyer and seller would have agreed upon and criticizing expert's "selective application of th[e] facts"). Much like in *Fair Isaac*, here Boughn admitted in her testimony that she did not apply a methodology consistent with the legal standard of a hypothetical license fee and instead used a punitive standard because, in her view, "[t]he time for negotiation has passed." Def. Mot., Boyer Declaration Ex. B at 284:25–285:3. The cases cited by Defendants provide ample support for the Court's exclusion of Boughn and none of the cases cited by Plaintiff constitute binding precedent that compels a different result. *See* Def. Reply 4-5.

In short, Judge Farrer's exclusion of Boughn is a classic exercise of discretion that falls well within his authority and Plaintiff offers no basis to overturn it, let alone a basis that would suffice under the highly deferential standard of review applicable here.

### IV.   CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court overrule Plaintiff's Objections.

Respectfully submitted,

 /s/ Ravi V. Sitwala
Jonathan R. Donnellan
Ravi V. Sitwala
Nathaniel S. Boyer
Nina Shah (admitted *pro hac vice*)
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2030
Fax: (212) 649-2035
jdonnellan@hearst.com
rsitwala@hearst.com
nathaniel.boyer@hearst.com
nina.shah@hearst.com

Dated: July 20, 2020                         *Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 20, 2020.

/s/ Ravi V. Sitwala
Ravi V. Sitwala
