IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |
|---|---|
| ALEXANDER STROSS,<br><br>        Plaintiff,<br><br>v.<br><br>HEARST COMMUNICATIONS, INC., THE HEARST CORPORATION, HEARST NEWSPAPERS, LLC, HEARST NEWSPAPERS II, LLC, HEARST SEATTLE MEDIA, LLC, HEARST MEDIA SERVICES CONNECTICUT, LLC, EDWARDSVILLE PUBLISHING COMPANY, LLC, MIDLAND PUBLISHING COMPANY, LLC, and HURON PUBLISHING COMPANY, LLC,<br><br>        Defendants. | Civil Action No. 5:18-cv-01039-JP-RBF |

**REPLY IN FURTHER SUPPORT OF
DEFENDANTS' OBJECTION AND MOTION TO EXCLUDE CERTAIN EVIDENCE IN
OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1.      As explained in the Objection,[1] where a party refuses to produce documents or answer questions on a topic during his deposition, that party must be precluded from relying on that evidence in the case. Objection ¶ 10 (citing cases). Plaintiff does not contest or otherwise address the precedent Defendants cite for that proposition. And in his Opposition, Plaintiff does not dispute that, during discovery, he invoked the "settlement negotiation privilege" and "confidentiality obligations" to refuse to produce documents or answer questions concerning his

---

[1]      "Objection" refers to Defendants' Objection and Motion to Exclude Certain Evidence in Opposition to Defendants' Motion for Partial Summary Judgment, *see* ECF No. 111. "Opposition" refers to Plaintiff's Response to Defendants' Objection and Motion to Exclude Certain Evidence in Opposition to Defendants' Motion for Partial Summary Judgment, *see* ECF No. 115.

history of settling prior claims for infringement. *See* Objection ¶ 7. This alone is reason to sustain Defendants' Objection: Plaintiff cannot assert "privilege" and "confidentiality" as a shield to prevent disclosure, but then use the supposedly privileged and confidential information as a sword in his case.[2]

      2.      Plaintiff also does not take issue with Defendants' argument that settlement evidence is not probative of a reasonable licensing fee "negotiated prior to litigation in an open and fair market." *See Attachmate Corp. v. Health Net, Inc.*, No. C09-1161 MJP, 2010 WL 11561518, at *1 (W.D. Wash. June 18, 2010). As Defendants explain (and Plaintiff does not dispute), the dynamics of settlement obviously skew the cost of the "retroactive license" that often accompanies settlement agreements. That is particularly true in copyright infringement cases, where plaintiffs (like serial copyright plaintiff Alexander Stross) can hang the threat of statutory damages and attorneys' fees over defendants' heads to extract settlements that are many times greater than any actual damages the plaintiff may sustain. Objection ¶¶ 4-6 (collecting case law). Plaintiff's only response to this case law is to argue that he is using the settlement evidence to show harm to his market for the work, not actual damages that he suffered.

      3.      The distinction Plaintiff draws is vanishingly thin. Plaintiff's argument that a market exists is contingent upon a showing of actual damages: he uses the settlement evidence to attempt to show that he has suffered actual damages in the form of lost licensing revenue that

---

[2]      In their Objection, Defendants described Plaintiff's attempt to rely on settlement evidence as "galling" and "borderline sanctionable." Objection 4-5. To this, Plaintiff accuses Defendants of making "factually unsupported" "ad hominems." Opposition 3. But again, Plaintiff does not dispute that he refused to produce any settlement evidence in discovery; at one point, Plaintiff's counsel even accused Defendants' counsel of "harass[ing]" Plaintiff for even inquiring into the matter. Objection 4. Plaintiff's conduct here is quite "galling" and "borderline sanctionable," and that Plaintiff would just wave his hand at these critiques does nothing but highlight that he has no response to Defendants' argument.

resulted from HCI having harmed the market for licensing the Renovation Photographs. ECF No. 107 at 19 (responding to Defendants' argument that no market harm exists because Plaintiff permitted and encouraged uses of the Renovation Photographs for free); *see also* Objection 4-5. Because Plaintiff's market existence argument relies on lost licensing revenue, the same argument about settlement agreements being irrelevant—with which Plaintiff does not take issue—applies.

4.      In any event, the most that can be said for Plaintiff's argument is that he claims to be offering the evidence for a purpose that is different than that for which it was offered in the cases Defendants cited. But that is not an explanation for *why* settlement evidence *is* relevant for the purpose that *he* offered. Plaintiff does cite to one case in support of his relevancy argument, *see* ECF No. 107 at 19 & n.36 (citing *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 180, 189 (D. Mass. 2007) as finding that "media uses and settlements totaling over $60,000 established a 'market' for the photos that would be destroyed by a finding of fair use")—but even the footnote quoted by Plaintiff reveals that *Fitzgerald* does not stand for what Plaintiff says it does. *Fitzgerald* simply asserts that settlement evidence "does not detract from the evidence that a market . . . exist[s]," 491 F. Supp. 2d at 189 n.3, *not* that settlement evidence is affirmatively probative of market existence or harm.[3]

---

[3]      Plaintiff purports to cite to another case "on this issue," *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 433 (S.D.N.Y. 2018), but that case has nothing to do with "this issue" of the relevancy of settlement evidence. In fact, in *Otto*, the parties stipulated that they would not, "for any purpose other than impeachment, seek to introduce, elicit testimony concerning, or otherwise reference or use evidence concerning any agreements to settle any claims for copyright infringement, including any retroactive licensing agreements that were entered into in connection with any such settlement agreements." *See* 17-cv-04712-GHW-JLC (S.D.N.Y.), ECF No. 120 (joint pre-trial order), at 3 (subsection entitled "Stipulation Regarding Settlement Agreements"). Although Plaintiff accuses Defendants of "continu[ing] to misrepresent" *Otto*, Opposition 2, it is Plaintiff who, at a minimum, is misinformed about *Otto*.

5.      For this same reason, Plaintiff's attempt to evade the stipulation must also fail. The Opposition argues that Plaintiff is offering settlement evidence as evidence of market existence or harm, a purpose supposedly separate and apart from evidence of damages, and that this use of settlement evidence is therefore not a breach of the stipulation's prohibition against Plaintiff's use of settlement evidence to show any element of Plaintiff's actual damages. This argument fails because, as explained *supra* ¶ 3, it is premised on a superficial distinction between Plaintiff's argument of market harm and a damages argument. Plaintiff's related argument that he should not be held responsible for Defendants' "voluntary" choice to "stipulate[] that they would not seek such evidence," Opposition 2-3, ignores that, of course, Defendants' stipulation was "consideration" for Plaintiff agreeing not to rely on such evidence in the first place—and Plaintiff is not living up to his end of the bargain.

6.      In short, Plaintiff should be prohibited from introducing evidence that he refused to produce upon asserting that it was "privileged" and "confidential," that is not probative of market harm, and for which he entered a stipulation promising not to rely on such evidence. For these reasons and those stated in Defendants' Objection, Defendants respectfully request that the Court grant Defendants' motion to exclude paragraph 5 of the Stross Declaration in opposition to the Motion.

[*signature block on next page*]

Dated:          July 27, 2020              Respectfully submitted,

                                           HEARST CORPORATION
                                           OFFICE OF GENERAL COUNSEL

                                           /s/ Nathaniel S. Boyer
                                           Jonathan R. Donnellan (State Bar No. 24063660)
                                           Ravi V. Sitwala
                                           Nathaniel S. Boyer
                                           Nina N. Shah (admitted *pro hac vice*)
                                           300 West 57th Street, 40th Floor
                                           New York, NY  10019
                                           (212) 841-7000
                                           (212) 554-7000 (fax)
                                           jdonnellan@hearst.com
                                           rsitwala@hearst.com
                                           nathaniel.boyer@hearst.com
                                           nina.shah@hearst.com

                                           *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served on all counsel of record through the Court's electronic filing system on July 27, 2020.

/s/ Nathaniel S. Boyer
Nathaniel S. Boyer