UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ALEXANDER STROSS<br><br>        Plaintiff,<br><br>vs.<br><br>HEARST COMMUNICATIONS, INC., THE HEARST CORPORATION, HEARST NEWSPAPERS, LLC, HEARST NEWSPAPERS II, HEARST SEATTLE MEDIA, LLC, HEARST MEDIA SERVICES CONNECTICUT, LLC, EDWARDSVILLE PUBLISHING COMPANY, LLC, MIDLAND PUBLISHING COMPANY, LLC, HURON PUBLISHING COMPANY, LLC<br><br>        Defendants | CIVIL ACTION # 5:18-cv-1039-JKB-RBF<br><br>JURY DEMANDED |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS AMENDED OBJECTIONS TO THE MAGISTRATE JUDGE'S CLARIFIED ORDER GRANTING IN PART DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF ELLEN BOUGHN**

Neither the record nor the law supports the exclusion of Ellen Boughn's expert report and testimony in this case, and Plaintiff has therefore respectfully objected to Magistrate Judge Farrar's pending orders. (*See* Doc. 114, "Pltf.'s Am. Obj."). Plaintiff first addressed these issues in his Response to Defendants' Motion to Exclude (Doc. 80, hereinafter "Pltf.'s Resp.") — with extensive references to the record and applicable case law, and a recitation of Ms. Boughn's 40-plus years of experience in photo licensing and appraisal, which would be helpful to any jury trying to understand the issues in this case. Unfortunately, Magistrate Farrar's Orders contains little acknowledgment of these sources, reflecting instead a misplaced reliance on Defendants' mischaracterization of the record and applicable law – much of which is quoted directly in his rulings. For these reasons and others set forth in Plaintiff's briefing papers, he respectfully requests that the Court sustain his objections and set aside the Orders.

**ARGUMENT**

Magistrate Farrar excluded Ms. Boughn's expert report and testimony over expressed concerns with the factual bases for her opinions, including her purported failure to adequately consider Stross' licensing history, and Defendants' alleged revenues. Pltf.'s Am. Obj. at 2-3. Defendants concede that such challenges generally go to the *weight* of the testimony, but argue that exclusion is appropriate in this instance — referencing several cases cited in their original motion to exclude. Defs.' Resp. (Doc. 117) at 4. Stross has no issue with the reasoning or outcomes of those cases; however, all of them are distinguishable from this case, and the holdings in most of them have been mischaracterized by the Defendants.

For instance, the Defendants cite *Gaylord v. United States* in support of their meritless argument that an expert's opinion must be excluded when it isn't predicated on the plaintiff's licensing history, quoting the opinion as follows: "[t]he hypothetical-negotiation must be tied to

the particular work at issue and its marketplace value…"[1] But Defendants have provided no context for that quote. What the court was really saying is that factors used to establish fair market value must be *relevant*, and it specifically confirmed "'benchmark' licenses *by others in the industry* may [also] be useful." *Gaylord*, at 1368 (emphasis added). Defendants' elliptical quote does not accurately convey *Gaylord's* holding, much less support the Magistrate's ruling.

In similar fashion, the Defendants argue that the Magistrate was simply exercising his "discretion" when he "sided with a line of cases" in which fair market value was predicated on the copyright owner's licensing history. Defs,' Resp. at 5. However, the issue here isn't whether it was appropriate to focus on licensing history in *other* cases. Instead, the issue is whether it would have been appropriate to do so in *this* case. As Ms. Boughn explained, the answer is "no" because Stross' licensing history involved non-comparable uses, and would have required her to speculate about the monetary value of a "quid pro quo" license.[2] Pltf.'s Resp. at 11-13. Accordingly, she used comparable license fees for comparable uses – a widely accepted and objective methodology that was clearly appropriate under these circumstamces. *Id*. Meanwhile, neither Defendants nor the Magistrate have cited a *single* case in which a court excluded testimony based on the expert's failure to consider a plaintiff's past licensing history, *and there is none*.[3]

---

[1] Defs.' Resp. at 4 (quoting *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015)) (cited in Magistrate's Order (Doc. 96) (the "Order") at 4).

[2] Stross has since licensed the photos for $600/each for editorial use, but at the time of Ms. Boughn's deposition, there were no such licenses for concrete monetary value. *See* Pltf.'s Resp. at 13.

[3] *See* Pltf.'s Resp. at 12, citing *Leonard v. Stemtech Health Scis., Inc.*, Civil Action No. 08-067-LPS-CJB, 2013 U.S. Dist. LEXIS 138446, at *18-19 (D. Del. Sep. 23, 2013) ("None of the cases to which Defendant cites stand for the proposition that an expert calculating actual damages must rely on the plaintiff's past licensing fees, or that a failure to do so automatically renders an expert's methodology unreliable, and the Court has not located any such case."); *Under a Foot Plant, Co. v. Exterior Design, Inc.*, No. BPG-15-871, 2017 U.S. Dist. LEXIS 132998, at *9 (D. Md. Aug. 18, 2017) (same). Defendants falsely state that they have now identified two cases

With regard to the "viral nature of the photographs" (a factor raised *sua sponte* by the Magistrate (Order at 5)), the Defendants argue that it was *proper* for Ms. Boughn to disregard that factor because "the later popularity of the images would have been unknown to the parties" at the time of their "hypothetical negotiation." Defs.' Resp. at 5.  While that may be true, a more important reason is that the lion's share of Defendants' uses had nothing to do with the "viral" Llano River Tiny House Story.  Instead, the photos were used exactly like stock photos – to illustrate *different* stories, such as a UT student's construction of a tiny home that enabled him to live debt free. Pltf.'s Resp. at 12-13 & n. 30.  In light of the foregoing, the Magistrate erred when he concluded that Ms. Boughn paid insufficient attention to the "viral nature of the photos," and it is of course noteworthy that the Defendants' own arguments support that conclusion.

With regard to Defendants' alleged revenues, they do not deny that their "estimates" are inaccurate, and concede that they failed to provide any basis for the figures during the discovery period.[4] Defs.' Resp. at 5-6.  Moreover, the Defendants haven't cited a single case stating that an infringer's revenues form the apex of a fair market valuation. *Id*.  Instead, they meekly assert that their "expect[ed]" revenues "seem[] plainly relevant," and that the difference between their

---

where the court actually did exclude an expert's opinion because he failed to consider licensing history (Defs. Resp. at 7-8), but those cases say no such thing.  To begin with, *360 Mortg. Grp.* isn't even a copyright case, and wasn't concerned at all with licensing history. *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc*. (No. A-14-CA-00847-SS, 2016 WL 6075566 (W.D. Tex. Apr. 22, 2016)). *Fair Isaac* simply notes that objective criteria must be used in a fair market valuation – which is entirely consistent with Ms. Boughn's approach. *Fair Isaac Corp. v. Fed. Ins.,* No. 16-cv-1054 (WMW/DTS), 2020 U.S. Dist. LEXIS 49781, at *39-40 (D. Minn. Mar. 23, 2020).  The court also *repeatedly* confirms that challenges to the bases of an expert's opinion go to the *weight* of the evidence rather than *admissibility*. *Id*. at *11, 13, 19, 25, 35 & n. 5.  In short, Defendants are mischaracterizing precedent in the hopes that the Court will follow suit.

[4] Instead of refuting these facts, Defendants once again proffer the fiction that they offered to "pay" for a third 30(b)(6) deposition after their first two witnesses were incapable of explaining the basis for the figures, and argue that Stross therefore has no basis to complain about the reports. Defs.' Resp. at 6.  As discussed in Plaintiff's pending request for Rule 37(d) Sanctions (Doc. 80, at 2), that is false, and the Defendants have only themselves to blame for failing to produce evidence on this issue during the discovery period. *Id*.

3

[alleged] actual earnings and Ms. Boughn's valuation raises "red flags." Defs.' Resp at 6.  Both of those assertions are incorrect.  An infringer's subjective willingness to pay fair market has *nothing* to do with fair market valuation;[5] and its actual earnings are part of the Section 504(b) analysis (infringer's profits), *not* Section 504(a) (actual damages). 17 U.S.C. § 504(a) and (b).  Accordingly, it would have been totally *inappropriate* for Ms. Boughn to consider those factors.

Defendants have no substantive rebuttal to Ms. Boughn's stated basis for her 10% bulk discount.  Defs.' Resp. at 6.  Instead, they change the subject and complain that she could not provide an "analogue" to her total hypothetical license fee. *Id*.  But that should come as no surprise.  In order to identify an "analog license fee," one would need to start with an "analog use," and it should go without saying that Defendants' wholesale infringement of Plaintiff's photographs is a "hen's tooth" case (involving unauthorized use of 37 photographs in at least 15 articles, spread across at least 50 publications, over the course of 3 years).  More to the point, there was nothing "arbitrary" about Ms. Boughn's use of a 10% discount, which — based on her 40-plus years' experience — is "customary" in the industry.[6]

With respect to whether all of the photos have "independent economic value," the Defendants suggest that Stross no longer cares about that, and has instead responded "so what?" Defs.' Resp. at 7.  That is cute, but inaccurate.  Stross has presented the Court with his factually and legally supported argument as to why the photographs have independent economic value, and stands by it — particularly in the context of the statutory damages analysis. *See* Pltf.'s Resp.

---

[5] Pltf.'s Resp. at 14, citing *Davis v. Gap, Inc.*, 246 F.3d 152, 171-72 (2d Cir. 2001) ("whether the infringer might in fact have negotiated with the owner or purchased at the owner's price is irrelevant to the purpose of the test."); *Under a Foot*, 2017 U.S. Dist. LEXIS 132998, at *12 ("[t]he question is not what the owner would have charged, nor what the infringer might have been willing to pay …" (internal quotations and citations omitted).

[6] *See, e.g., Ergon-West Va., Inc. v. Dynegy Mktg. & Trade*, No. 3:06cv714-DPJ-LRA, 2011 U.S. Dist. LEXIS 25064, at *21 (S.D. Miss. Feb. 25, 2011) (expert may provide testimony based on personal knowledge of industry custom and practice).

4

to Defs.' MSJ (Doc. 107) at 8-11.  In the meantime, Defendants haven't cited a single case for the proposition that "independent economic value" has any relevance to *actual damages*, and in fact it doesn't. *See* Pltf.'s Obj. at 8-10.

Defendants also take Ms. Boughn to task over her comment that "[t]he time for negotiation has passed" — which they characterize as a "punitive standard." Def.'s Resp. at 8. But once again, Defendants are taking Ms. Boughn's testimony out of context.  Considering the surrounding testimony, Ms. Boughn was simply confirming that "subjective factors" — such as the Defendants' willingness to pay fair market value — are irrelevant to fair market valuation,[7] and she is right. *See* n. 4, *supra*.  Instead, fair market value *must* be predicated on "objective factors," such as comparable license fees for comparable uses (Pltf.'s Resp. at 11).[8]

In summary, were this Court to affirm the Magistrate's pair of Orders excluding Ellen Boughn's testimony on actual damages, it would be endorsing an outlier approach by sanctioning consideration of irrelevant, subjective and speculative factors that have no place in a fair market valuation — including the infringer's alleged profits and what it would have been willing to pay; non-comparable licensing history; and speculation over "independent economic value" and what a *quid pro quo* license is worth.  Fair market valuation is not and should not be concerned with those issues.  Instead, it must be based on *objective* market factors, such as comparable license fees for comparable uses — a methodology that has been repeatedly accepted in copyright cases, and was correctly applied by Ms. Boughn in this case.  For these reasons, Plaintiff respectfully requests that the Court sustain his objections and set aside the Magistrate's Orders.

---

[7] *See* Boyer Decl., (Doc. 92-1), **Ex. B** (Boughn Dep.), 287:21-25 ("a hypothetical is based not on one specific plaintiff and one specific defendant.  It is a general hypothetical based on the marketplace, on what's available in terms of licensing fees.").

[8] As discussed above, the analysis may also include the owner's licensing history — *so long as it involves comparable uses, and does not require undue speculation*. *See, e.g., Gaylord*, 777 F.3d at 1368.

5

Dated this 27th Day of July, 2020.

**LAW OFFICE OF BUCK MCKINNEY, PC**

/s/ R. Buck McKinney
R. Buck McKinney
State Bar No. 00784572
408 W. 11th St., Fifth Floor
Austin, Texas 78701
Telephone: 512/236-0150
Fax: 512/444-1879
*mckinney@buckmckinney.com*
ATTORNEY FOR PLAINTIFF ALEXANDER STROSS

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties who have appeared in this action.

/s/ R. Buck McKinney

6